# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00214-CV

---

**Agnieszka Karolina Schvartz-Poludniewska, Appellant**

**v.**

**Clement Schvartz, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-23-002452, THE HONORABLE GARY HARGER, JUDGE PRESIDING

---

## ORDER AND MEMORANDUM OPINION

**PER CURIAM**

Pending before the Court in this appeal of an amended final divorce decree (the Decree) are appellant Agnieszka Karolina Schvartz-Poludniewska's Emergency Motion to Stay (Motion), appellee Clement Schvartz's response to the Motion, and Schvartz-Poludniewska's reply in support of the Motion. She asks by her Motion that we suspend the Decree "pending this Court's ruling on her Appeal" of the Decree. We ordered an administrative stay[1] of certain portions of the Decree pending our final decision on the Motion. *See Schvartz-Poludniewska v. Schvartz*, No. 03-25-00214-CV, 2025 WL 1171791, at *1 (Tex. App.—Austin Apr. 22, 2025, order) (per curiam). We now lift our prior administrative stay and order the following relief,

---

[1] *See, e.g.*, *In re State*, 711 S.W.3d 641, 643 & n.2 (Tex. 2024) (orig. proceeding) (discussing administrative stays).

granting in part and denying in part the Motion and abating and remanding the cause to the trial court for a hearing and its recommendations as detailed below.

***Schvartz-Poludniewska's residence in the former marital home***

The Motion raises two matters, the first of which concerns Schvartz-Poludniewska's continued ability to reside in the parties' former marital home along with the couple's minor children.[2] The Decree confirmed the marital home as Schvartz's separate property and granted him exclusive use and possession of the home "beginning not less than 30 days following the entry of the" Decree. That 30-day deadline was April 23, 2025. The Decree also named both parents as joint managing conservators of the children but awarded Schvartz-Poludniewska the exclusive right to designate the children's primary residence (with certain geographic restrictions).

A week before the deadline concerning the former marital home, Schvartz's counsel told Schvartz-Poludniewska's that because of the deadline, Schvartz-Poludniewska "needs to vacate that residence on or before that date" and that Schvartz "is NOT allowing [her] to continue to reside there after such date, so after April 23, 2025, she will be trespassing."

Schvartz-Poludniewska asks in the Motion for the portions of the Decree that could cause her to have to vacate the former marital home to be suspended until this Court decides her appeal of the Decree. She represents that Schvartz lives outside the United States, that one or more of the children attend school or extracurricular activities based on the location of the home, that the closest emergency rental option that she could find is over 30 minutes away by car from the home, and that her licensed professional counselor and parenting coach has written a letter in

---

[2] The Decree and the parties sometimes refer to the property as the Montana Norte Residence.

2

support of Schvartz-Poludniewska's wish to stay in the home. She attached a copy of that letter to the Motion, and in it, the counselor says that "forcing [Schvartz-Poludniewska] and her children to vacate their current home may potentially impact their emotional stability and provide [sic] them with the best chance for a healthy and balanced future."

In contrast with the Decree, under the original decree Schvartz-Poludniewska was allowed to stay in the home until all appeals will have been exhausted. In the original decree, the court ruled that Schvartz-Poludniewska would "have exclusive use and possession of the residence . . . until ninety . . . days from the entry of this [d]ecree" but that "[i]n the event that an appeal is filed by either party, IT IS ORDERED that [she] shall have the option to remain in the . . . residence until ninety . . . days after all appeals have been exhausted." Also in the original decree, the court imposed conditions on her use of the home and requirements for upkeep. Contained in the original decree (but not carried forward into the Decree) are conditions and requirements that she "is specifically enjoined from . . . [m]aking any improvements to the property" and that these orders were in place:

> IT IS ORDERED that as long as [she] chooses to reside at the property, [she] shall be solely responsible for the routine maintenance of all portions of the property, including but not limited to the pool, the yard and landscaping, HVAC units, gas heaters, and the interior and exterior of the structures. IT IS FURTHER ORDERED that [she] shall be solely responsible for payment of all associated utilities with the . . . property. IT IS ORDERED that as long as [she] chooses to reside at the property, she shall maintain and timely pay the current contracts with the maintenance and service companies currently in place including, but not limited to Reliable Pool Care (pool), AT&T (fiber internet plan), City of Austin (utilities), Texas Gas Service (utilities), Alvarado (monthly landscaping, including lawncare, weeding and tree trimming), and HVAC/Heating servicing (bi-annual inspections and maintenance).

> IT IS FURTHER ORDERED that [she] shall work with New Wave Pools Inc. to finalize all City of Austin permits relating to the construction of the pool no later than January 1, 2025. [She] is ENJOINED from allowing anyone to use the pool until all electrical permits have been closed after inspection. [She] shall ensure

> that the pool equipment shed cover remains in place at all times to protect the equipment.
>
> IT IS ORDERED that, as long as [she] chooses to reside at the property pursuant to the timeline described herein, [Schvartz] shall timely pay the mortgage, property taxes, homeowner's association dues, homeowner's insurance, and the cost of repairs in excess of $1000.00 to any existing structure or major appliance currently on the property, unless such damage was caused by [Schvartz-Poludniewska], in which case such damage shall be repaired by [her] at her sole cost or expense.

These provisions were not carried forward into the Decree likely because under the Decree, she would not be residing in the former marital home for most of the pendency of this appeal.

Governing the Motion is Family Code section 109.002(c). That statute provides, with an exception not relevant here, that for final orders in suits affecting the parent–child relationship (SAPCRs), "[t]he appellate court, on a proper showing, may permit the order to be suspended." *See* Tex. Fam. Code § 109.002(c). We have exercised our authority under this statute to suspend the operation of orders pending resolution of the appeal in SAPCRs. *See, e.g.*, *Wiese v. AlBakry*, No. 03-14-00799-CV, 2015 WL 1315890, at *1 (Tex. App.—Austin Mar. 20, 2015, order) (per curiam); *In re R.H.M.*, No. 03-14-00603-CV, 2014 WL 4966543, at *1 (Tex. App.—Austin Oct. 3, 2014, order) (per curiam); *see also In re A.B.*, No. 12-22-00303-CV, 2022 WL 17685743, at *4 (Tex. App.—Tyler Dec. 14, 2022, orig. proceeding) (mem. op.) (emphasizing that suspension under Section 109.002(c) may come "either from the trial court or the appellate court, upon the requisite proper showing," and citing *R.H.M.*, 2014 WL 4966543).

Our authority under Section 109.002(c) allows us to suspend just portions of orders rather than suspending the order as a whole. *See In re Z.K.S.*, No. 13-19-00011-CV, slip order at 2 (Tex. App.—Corpus Christi–Edinburg June 28, 2019, order) (per curiam), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=eeeaa8a2-f030-4931-b894-e4d8791dbc58&coa=coa13&DT=Order&MediaID=47b9e3ce-ee03-49d7-9920-5ed2b45f6de5;

4

*In re A.C.S.*, 157 S.W.3d 7, 8–9 (Tex. App.—Waco 2004, order [mand. dism'd]) (per curiam). And it allows us to suspend orders even when the trial court has itself taken no action, or even refused, to suspend its own order. *See Nixon v. Attorney Gen.*, No. 05-17-01080-CV, 2018 WL 2126823, at *1 (Tex. App.—Dallas May 8, 2018, mand. denied) (mem. op.); *In re E.W.N.*, 482 S.W.3d 150, 156 (Tex. App.—El Paso 2015, no pet.); *Smith v. Smith*, 63 S.W.3d 599, 599 (Tex. App.—Waco 2002, order) (per curiam), *temporary order withdrawn upon final disposition of appeal*, 143 S.W.3d 206, 218 (Tex. App.—Waco 2004, no pet.).

Under Section 109.002(c), "[a]ppellate courts have found a 'proper showing' to include avoidance of disrupting the current living arrangements for a child pending appeal or potential danger to a child." *A.B.*, 2022 WL 17685746, at *4 (citing *In re B.L.W.*, No. 12-18-00281-CV, 2019 WL 4727823, at *10 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.)); *accord Nixon*, 2018 WL 2126823, at *1. Because portions of the Decree, coupled with Schvartz's counsel's trespass message, would essentially disrupt the children's current living arrangements with Schvartz-Poludniewska while this appeal is pending, it is appropriate for us to suspend those portions of the Decree pending disposition of this appeal.

Schvartz resists this conclusion with three arguments. His first is that suspending the Decree so that Schvartz-Poludniewska may continue to live in the former marital home would essentially deprive him of the use and enjoyment of his separate property because the home was confirmed to be his separate property by the Decree. But the portion of the Decree confirming the home to be his separate property is just as much a portion of the Decree that may be suspended under Section 109.002(c) as any other. His argument, therefore, begs the question about whether suspension is appropriate under the current circumstances. And it is appropriate because it will

5

keep the children's current living arrangements from being disrupted pending final resolution of this appeal. *See A.B.*, 2022 WL 17685746, at *4; *Nixon*, 2018 WL 2126823, at *1.

Schvartz's second argument is that we must impose a supersedeas-bond requirement on Schvartz-Poludniewska before we may suspend the Decree. He bases this argument on Rule of Appellate Procedure 24.2 and its provisions for calculating the amount for a supersedeas bond, deposit, or security. But the rule's supersedeas procedure is unnecessary to invoke here because Section 109.002(c) provides separate judgment-suspension authority. The appellate rules provide that "*[u]nless the law or these rules provide otherwise*, a judgment debtor may supersede the judgment by" using one of the Rules-provided supersedeas methods. *See* Tex. R. App. P. 24.1(a) (emphasis added). But the statutory suspension authority that Schvartz-Poludniewska invokes may operate with or without security given. *See* Tex. Fam. Code § 109.002(c); *Dolgener v. Dolgener*, 651 S.W.3d 242, 267 n.16 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Finally, Schvartz argues that a temporary suspension of the Decree pending final resolution of this appeal to allow Schvartz-Poludniewska to remain in the former marital home amounts to an award of child support or of spousal maintenance. But he has not provided, and we are unaware of, any authority to support that view. Our suspension of any portion of the Decree will operate only until our final disposition of this appeal; it is not an ongoing payment obligation beyond our disposition of the appeal.

Even though we have concluded that the Motion makes "a proper showing" under Section 109.002(c) to support suspending the Decree so that the children's living arrangements are not disrupted, because the Motion seeks temporary relief while this appeal is pending, we are to craft relief while bearing in mind the balance of harms between the parties. *See In re State*,

6

711 S.W.3d 641, 645 (Tex. 2024). If Schvartz-Poludniewska will be allowed to reside in the former marital home pending the outcome of this appeal, then she should be subject to some set of conditions and requirements like those detailed above, which were in the original divorce decree, when the trial court anticipated an extended stay by her in the former marital home.

Because some circumstances may have now changed, we abate and remand this cause to the trial court for a hearing and for the court to make recommendations to us about what conditions and requirements to impose on Schvartz-Poludniewska while she remains in the former marital home. *See E.W.N.*, 482 S.W.3d at 156–57 (suggesting similar abatement-and-remand procedure for some circumstances under Section 109.002(c)); *Z.K.S.*, No. 13-19-00011-CV, slip order at 2 (employing abatement-and-remand procedure under Section 109.002(c)), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=eeeaa8a2-f030-4931-b894-e4d8791dbc58&coa=coa13&DT=Order&MediaID=47b9e3ce-ee03-49d7-9920-5ed2b45f6de5.

### *Certain other real and personal property awarded to Schvartz by the Decree*

In the remainder of her Motion, Schvartz-Poludniewska refers to items of real and personal property that were awarded to Schvartz in the Decree. She says that those awards all turn on the legal interpretation of the effect of the parties' "French prenuptial agreement" and that an alternative interpretation of that effect by us in this appeal could result in millions of dollars' worth of property being awarded to her rather than to Schvartz. Therefore, she argues, the portions of the Decree that would allow Schvartz to alienate any of that property while this appeal is pending must be suspended because money damages would be unable to compensate for the loss of the property that might end up being awarded to her based on the outcome of this appeal.

Schvartz-Poludniewska's request here does not involve ensuring that the children's current living arrangements are not disrupted—the request deals with only property aside from the

7

former marital home and not the well-being of the children. She has not directed us to any authority that applies Section 109.002(c) to carry out what amounts to a suspension of a divorce judgment's property division.

A different provision of the Family Code, its section 6.709, governs temporary orders pending appeal that concern suspending a divorce judgment's property division. *See* Tex. Fam. Code § 6.709(a)(6). That statute governs what moving parties must show to obtain such a temporary order and what the court entertaining such a motion must and may consider when deciding whether to grant relief. *See id.* § 6.709(a), (c), (d), (e), (f). The statute imposes a deadline that a party seeking an original temporary order to suspend the enforcement of a divorce decree's property division may not file any such motion "after the date by which that party is required to file the party's notice of appeal under the Texas Rules of Appellate Procedure." *Id.* § 6.709(h)(2).

Considering Section 6.709's requirements for the moving party and for the court considering a motion for a temporary order suspending a divorce decree's property division, we believe that a "proper showing" under Section 109.002(c) to obtain an order from an appellate court suspending a divorce decree's property division—which is in effect what Schvartz-Poludniewska seeks—requires at least substantially the same kind of showing by the moving party as what is required under Section 6.709. *Cf. In re Moore*, 511 S.W.3d 278, 286 (Tex. App.—Dallas 2016, orig. proceeding & appeal, no pet.) (concluding that sister court's interpretation of Section 6.709 "applies equally to" similar wording in Section 109.001); *Grossnickle v. Grossnickle*, 935 S.W.3d 830, 850 n.16 (Tex. App.—Texarkana 1996, writ denied) (stating under Section 6.709's predecessor that "[t]he trial court is in a better position than the appellate court to provide for the preservation of the property and the protection of the parties when needed, because the trial court can take testimony concerning the need for such orders").

8

Were this not so, a party in Schvartz-Poludniewska's position could lie behind the log, wait for the deadline to move for a Section 6.709 temporary order of suspension to pass, and obtain from the appellate court the same kind of temporary order of suspension but on much less of a required showing.

For this second ground for relief, the Motion, its attachments, and the reply in support fail to make a "proper showing" under Section 109.002(c) as we have construed it. Schvartz-Poludniewska has provided no record to support the allegations that she makes about the properties at issue. *See Smith v. Smith*, No. 02-20-00064-CV, 2020 WL 6498521, at *2 (Tex. App.—Fort Worth Nov. 5, 2020, pet. denied) (mem. op.) (Section 6.709 motion properly denied in absence of supporting record). Although she argues that any alienation by Schvartz of real property awarded to him by the Decree would necessarily result in irreparable harm, loss of real property does not always result in irreparable harm and instead can sometimes be compensable in damages. *See, e.g.*, *Ugarte v. Hathcock*, No. 10-19-00470-CV, 2022 WL 1256929, at *2 (Tex. App.—Waco Apr. 27, 2022, no pet.) (mem. op.) (party failed to show irreparable harm stemming from loss of real estate because party "failed to present evidence regarding the unique nature of the Property, particularly since he planned to 'flip it' rather than use it as his residence or business or because it possessed some sort of sentimental value"); *Ginther–Davis Ctr., Ltd. v. Houston Nat'l Bank*, 600 S.W.2d 856, 865 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (party failed to show irreparable harm stemming from sale of land because party did not adduce evidence of alleged uniqueness of land at issue, of party's intent to maintain land rather than sell it, or that potential sales price for land obtained by opposing party was unfair). The most that Schvartz-Poludniewska does to present a record to establish irreparable harm in the potential loss of the real property at issue is simply attaching to her Motion the Decree, which lists

9

the real property at issue. For those items of property, the Decree otherwise provides Schvartz-Poludniewska protection by ordering Schvartz if he sells any of the properties "to deposit any and all sales proceeds into any US-based bank account in his name," where the funds are "ORDERED to remain . . . until all appellate process have been exhausted." Even more so for the personal property that Schvartz-Poludniewska complains about, any unlawful alienation of that property is compensable in damages. *See American Apparel Prods., Inc. v. Brabs, Inc.*, 880 S.W.2d 267, 269 (Tex. App.—Houston [14th Dist.] 1994, no writ) (recognizing default rule that damages are adequate to compensate for loss of personalty and stating that exception to default rule depends on showing of "special, peculiar, or unique value or character" of personalty); *Madariaga v. Morris*, 639 S.W.2d 709, 711 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (same).

Because Schvartz-Poludniewska has not brought forward a record to show the need to restrain Schvartz from alienating any of the real or personal property at issue (other than the former marital home), we deny this second portion of the Motion.

*Conclusion*

We lift our prior administrative stay. We conclude that Schvartz-Poludniewska has made a proper showing under Section 109.002(c) that she should be allowed to continue residing in the former marital home while this appeal is pending. We abate this cause and remand it to the trial court for it to hold a hearing. At the hearing, each side should be permitted to put forward evidence or argument or both about what conditions and requirements should be imposed on Schvartz-Poludniewska, if any, while she has a right to remain in the former marital home. After the hearing, the trial court should prepare its written recommendations on what conditions and requirements should be so imposed. The court should cause its written recommendations to be prepared and filed in this court in a supplemental clerk's record. If a reporter's transcription of the

10

hearing is made, then the trial court should cause that transcription to be prepared and filed in this court in a supplemental reporter's record. The hearing should be held within 21 days of the date of this order and memorandum opinion, and the supplemental record or records should be filed in this Court within 14 days after the holding of the hearing. After receipt of the trial court's recommendations, we will lift our abatement of this appeal and issue a suspension order under Section 109.002(c) that will suspend the portions of the Decree that divest Schvartz-Poludniewska of any right to continue residing in the marital residence while this appeal is pending but that will impose on her appropriate conditions and requirements accounting for the trial court's recommendations.

While this cause is abated and on remand with the trial court, we impose an administrative stay of the portions of the Decree that divest Schvartz-Poludniewska of any right to continue residing in the marital residence. If either party believes that further temporary relief is needed from this Court while this cause is abated and on remand or while this appeal is pending, including, but not limited to, any relief relating to the treatment of the former marital home and its contents, then the party should move for that relief in this Court. Schvartz-Poludniewska should exercise caution in her treatment of the former marital home and its contents while she is residing there during the abatement and remand.

It is ordered on July 23, 2025.


Before Chief Justice Byrne, Justices Kelly and Ellis
    Dissenting Opinion by Justice Ellis

Abated and Remanded

Filed:  July 24, 2025

11